FRANK v. NEWPORT MINING CO.

MASTER AND SERVANT — PERSONAL INJURIES — LIABILITY OF MAS-
TER — CONTRACT OF INDEMNITY.

Where a contract between master and servant, contained in a
poster displayed in the master's buildings, provides for the
payment of a sum of money to the widow of an employé
killed in the master's service, upon the execution of a release,
if required by the master, by all persons interested in or in-
jured by the death of the employé, a widow cannot maintain
an action on such contract until she has tendered a release,
if demanded by the master, executed by all persons who
would, under the death act, so-called, be entitled to share in·
the damages recovered for the wrongful act of the master
causing death, notwithstanding the poster also contains the
statement that employés assume their own risk of accident
from whatever cause.

Error to Gogebic; Cooper, J.   Submitted February 12,
1907.   (Docket No. 155.)   Decided July 1, 1907.

Assumpsit by Emma Frank against the Newport Min-
ing Company on a contract of indemnity.   There was
judgment for plaintiff, and defendant brings error.   Re-
versed, and judgment entered for defendant.

*Herb. M. Norris (James G. Flanders*, of counsel),
for appellant.

*James A. O'Neill*, for appellee.

MONTGOMERY, J.   This is an action brought to recover
upon a contract for indemnity.   The plaintiff's husband,
John Frank, was employed by the defendant as a miner
in the Newport mine in the city of Ironwood, and on the
23d day of December, 1905, he was killed by an accident
occurring at the mine while in the discharge of his duties.
At the time he entered the employ of the defendant there
was in existence a benefit club, which continued during

all the time that he was thus employed and of which he became and continued a member. The plan of the benefit company was stated in a printed poster put up on the defendant's premises, and provided in a general way that all employés entering the employ of the mine should pay 30 cents a month into a fund, to which the company should contribute an aggregate equal to the amount received from the employés for that month. The provisions in regard to the disposal of this fund were as follows:

"This benefit fund, collected in accordance with the above provisions, shall be held by this company and paid out by it to those employés whom it shall be determined are entitled to it under the provisions herein set forth.

" In case of death within six months following and from an accident sustained while a member is discharging his duties as an employé of this company, three hundred dollars will be paid from the benefit fund.

"The money provided by this rule to be paid in all cases of death shall not belong to the estate of the deceased, and shall not be liable to be attached, seized, or taken by or distributed to any creditor or creditors of the deceased; provided the deceased shall leave a living widow, a child or children, a father or mother, and the said money, and the whole thereof so to be paid in case of death as above set forth shall belong to and be the exclusive and absolute money and property of and shall be paid by the custodians of said benefit fund: *First*, to the widow of the deceased, if he should leave a widow surviving, then to his child, if he shall leave one surviving him, and, if more than one, then to all his children in equal proportions; *third*, if he shall leave no widow or children, then to his father, if he be living; *fourth*, if he shall not leave a widow, child or children, or father living, then to his mother, if living; and, *fifth*, if he shall not leave a widow, or child, or children, or father, or mother living, then the sum of money to be paid as aforesaid in case of death shall belong to the estate of the deceased, and shall be paid to the administrator thereof when duly appointed. All money paid under this rule will be paid to the person entitled, or to his or her agent duly authorized to receive the same, and, if a child or children under age shall be entitled to receive said money, or any part thereof, the same shall be paid to his, her, or their guardian when

duly appointed, or to the agent of such guardian duly authorized to receive the same, and when so paid all obligations on the part of the benefit fund, and the custodian thereof, under the provisions of this rule, shall have been fully performed and shall cease."

A further provision stated in this poster was as follows:

" The receipt of relief from the benefit fund, in case of accident, relieves this company from all liability, and is in lieu of all damages, and said company reserves the right to retain all sums due for indemnities until a release is properly executed by all persons interested in, or injured by the death or disability of such employé."

In a statement preceding the statement of the general plan, but a part of the same poster, were the following statements:

"Employers cannot be considered legally responsible for the aid or support of those dependent upon any of the employés. All employés assume their own risk of accidents or illness from whatever cause."

After the death of John Frank, plaintiff, who was his widow, demanded payment of the $300 indemnity provided in case of death, and payment was refused except upon condition that a release be obtained from those who would, under the death act, be entitled to share in any judgment recovered against the defendant in an action for damages for causing the death of John Frank. Plaintiff thereupon instituted this action and recovered judgment upon a finding of facts and law, the facts found being those above stated, and defendant brings error.

The defendant contends that, as this is an action based upon the contract, the terms of which contract must control, and that by the express and clear terms of the contract the indemnity payable to the plaintiff became due and payable only when a release should be executed by all persons interested in or injured by the death or disability of such employé, if such release should be required by the company, and that this language is susceptible of no other construction than that the company was entitled

to demand a release executed by all persons who would, under the death act so-called, be entitled to share in the damages recovered for the wrongful act of defendant causing death. This is by no means a new question to the courts. A similar question has been dealt with in a number of the States in the following cases: *Eckman* v. *Railroad Co.*, 169 Ill. 312 (38 L. R. A. 750); *Pittsburgh, etc., R. Co.* v. *Moore*, 152 Ind. 345 (44 L. R. A. 638); *Chicago, etc., R. Co.* v. *Wymore*, 40 Neb. 645; *Chicago, etc., R. Co.* v. *Bell*, 44 Neb. 44; *Donald* v. *Railway Co.*, 93 Iowa, 284 (33 L. R. A. 492); *Pittsburg, etc., R. Co.* v. *Cox*, 55 Ohio St. 497 (35 L. R. A. 507).

The reasoning upon which they rest may be stated to be, briefly, this: The contract is not a contract relieving the defendant from the consequences of its own negligence, and, notwithstanding this contract, the party is entitled under the death act to sue and recover in case of death, or the party indemnified himself, if living, can maintain an action for damages as though this contract were not in existence; but the effect of the contract is to give to the party injured, if living, or to those entitled to take an indemnity under the contract in case of his death, an election, and either may, if he so elect, bring an action for the damages, ignoring the contract, or he may, if he can, comply with the conditions upon which the indemnity is payable, accept the indemnity, and upon doing so discharges wholly the right of action based upon the tort.

Construed in this light, these contracts have been sustained as in no way infringing any rule of public policy. The circuit judge was of the opinion in this case that the clause of the contract providing that the receipt of relief from the benefit fund should relieve the company from liability for damages and reserving the right to require a release by the persons interested in, or injured by, the death or disability of such employés could be construed as requiring such release only from those parties who were entitled under the *contract of indemnity* to take, or who were interested in or injured by the death or disabil-

ity by reason of such contract.    While there is some plausibility in this contention, we feel constrained to hold that the clause, taken as a whole, and the connection in which the terms of the release which may be required are defined, leads to the conclusion that the parties must have intended that the release should include all those who were injured by the death of the employé and would be entitled to recover because of such injury.    It is true that, in other portions of the poster or contract, it is provided that this money should be payable to the widow, and that the children dependent upon the deceased are excluded, and it is argued from this that an absolute right is vested in the widow to this fund, and that, therefore, to require a release on behalf of others who are not interested in this fund is to require of her an impossible condition to the exercise of an admitted right.    There is some force in this contention, but the contract must be construed as a whole, and, if effect be given to the clause authorizing the defendant to require a release, this must act as a qualification of the widow's right to receive the indemnity, and her right must be considered as a right to receive such indemnity only on condition that she secure a release from all persons interested in or injured by the death or disability of the employé.    The case of *O'Neil* v. *Iron Co.*, 63 Mich. 690, is cited, in which case it was held that a representation that the company could not be made liable for damages for injuries resulting to an employé in any case might be treated as a fraud.    It is obvious, however, that this case cannot control here, as no effort is here made to avoid the contract in question, but the action is brought in affirmance of the contract.

But it is further argued that, as this furnishes a statement of the basis upon which the parties contracted, it is not reasonable to suppose that after representing that there could be no liability for damages, yet the parties contemplated that the release mentioned in the contract would be a release from something which the parties

148 MICH.—41.

understood could not exist. This is a forceful statement of the contention, and, if the terms of the contract were more doubtful, the consideration suggested might be controlling. But upon careful deliberation we are not able to say that this contract is ambiguous or uncertain in its terms. The defendant contributed to this fund. It had the right to provide for such terms as should afford protection to itself in case of injury to an employé resulting in death or otherwise. It results from what has been stated that the court was in error.

The judgment must be reversed, and judgment entered for defendant, with costs of both courts.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.